J. S34042/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INT. OF:  A.B., A MINOR     :     IN THE SUPERIOR COURT OF
    :        PENNSYLVANIA
    :
APPEAL OF:  C.B., FATHER     :      No. 533 MDA 2020

Appeal from the Order Entered February 24, 2020,
in the Court of Common Pleas of Berks County
Juvenile Division at No. CP-06-DP-0000197-2019

IN THE INT. OF:  C.B., A MINOR     :     IN THE SUPERIOR COURT OF
    :        PENNSYLVANIA
    :
APPEAL OF:  C.B., FATHER     :      No. 534 MDA 2020

Appeal from the Order Entered February 24, 2020,
in the Court of Common Pleas of Berks County
Juvenile Division at No. CP-06-DP-0000198-2019

BEFORE:  PANELLA, P.J., BENDER, P.J.E. AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED SEPTEMBER 16, 2020**

In this consolidated appeal, C.B. ("Father") appeals from the amended orders entered on February 24, 2020 finding that there was clear and convincing evidence that his two, seven-month-old children, A.B. and C.B. (collectively, "Children"), were victims of child abuse as defined by 23 Pa.C.S.A. § 6303; finding that there was ***prima facie*** evidence that Father

was the perpetrator of said abuse; and adjudicating the Children dependent.[1]

After careful review, we affirm.

The juvenile court summarized the relevant facts and procedural history of this case as follows:

> On October 23, 2019, 7-month old C.B. was taken to the Emergency Room at the Reading Hospital by [Mother] and by L.G., her maternal Grandmother ("Grandmother"). The reason for this visit to the Emergency Room was that Mother had noticed swelling and pain in C.B.'s left leg when C.B. was picked up that morning. Mother told Dr. Hannah Mishkin, M.D., an Emergency Room physician who testified as an expert in emergency medicine at the adjudicatory hearing, and who had examined C.B., that for approximately two days before the visit to the Emergency Room, C.B. had seemed "fussy." On the night of October 22, 2019, at approximately 10:00 p.m., C.B. was in her jumper while Mother was feeding C.B.'s twin, A.B. Father was playing video games in the living room. When Mother picked C.B. up out of her jumper that night, C.B. seemed a little fussy, but there was nothing out of the ordinary. Mother thought that C.B. might be teething and noticed nothing unusual until the morning of October 23, 2019.
>
> On physical examination of C.B., Dr. Mishkin noticed some swelling of the left leg, and noticed that C.B. had a great deal of pain in her mid-thigh when it was touched. C.B. would start to cry when her left leg was palpated. There was also pain in the child's leg when her hips were rotated. This caused Dr. Mishkin to be concerned about a possible fracture, as well as other possible diagnoses. X-rays and bloodwork were ordered. An x-ray of C.B.'s left thigh showed a mid-shaft femur fracture. The fracture in a long bone

---

[1] We note that the juvenile court also found that there was ***prima facie*** evidence that M.W. ("Mother") had abused Children, but Mother has not appealed these findings.

such as the femur caused Dr. Mishkin to consider the possibility of child abuse.

After taking Mother to the X-ray Department and showing her C.B.'s x-ray, Dr. Mishkin spoke with Mother about admitting C.B. overnight. She also spoke with Mother about admitting C.B.'s twin brother, A.B., overnight for evaluation due to the possibility that if C.B. was at risk, then A.B. might be at risk. A.B. had not been brought to the hospital due to injuries; he had accompanied Mother, Grandmother, and C.B. to the hospital. Mother agreed to allow A.B. to be evaluated, and C.B. and A.B. were admitted to the hospital.

Skeletal surveys, which are a series of x-rays of the body, were completed for both twins at the Reading Hospital. The skeletal survey of C.B. showed C.B.'s femur fracture, while the skeletal survey of A.B. showed that A.B. had a right femur fracture, called a classic metaphyseal ("CML") fracture. CML fractures are "highly specific for child abuse" and are caused by a yanking, twisting or pulling motion of the leg. These fractures are also called "chip fractures" or "corner fractures."

On October 24, 2019, upon discharge of C.B. and A.B. from the hospital, and upon application of Berks County Children and Youth Services ("BCCYS"), Emergency Orders were entered directing Berks County Children and Youth Services to take emergency protective custody of each child. Also on October 24, 2019, Petitions for Dependency were filed by BCCYS delineating the injuries of each child and alleging that the Children were without proper parental care and control. Subsequently, on January 6, 2020, Amended Petitions for Dependency were filed by BCCYS alleging that the Children were victims of child abuse.

After hearings held on February 5, 2020 and February 6, 2020, th[e juvenile c]ourt entered its Orders of Adjudication and Disposition on February 6, 2020, finding that each child was without proper

parental care or control and adjudicating each child dependent. Temporary custody was transferred to BCCYS for placement purposes. Further, the February 6, 2020 Orders provided that the determination of whether the Children were victims of abuse would be addressed by separate Order. On February 24, 2020, Amended Orders of Adjudication and Disposition were filed as to each child[,] which included the following findings with regard to abuse:

1. Clear and convincing evidence established that [the Children] were the victims of child abuse as defined by 23 Pa.C.S[.A. §] 6303.

2. Pursuant to 23 Pa.C.S.[A. §] 6381(d), there was ***prima facie*** evidence that each child was abused by Mother.

3. Pursuant to 23 Pa.C.S[.A. §] 6381(d), there was ***prima facie*** evidence that each child had been abused by Father.

4. Mother failed to rebut the presumption of abuse set forth by 23 Pa.C.S.[A. §] 6381(d) relating to ***prima facie*** evidence of abuse by a child's caretakers.

5. Father failed to rebut the presumption of abuse set forth by 23 Pa.C.S.[A. §] 6381(d) relating to ***prima facie*** evidence of abuse by a child's caretakers.

Juvenile court opinion, 4/16/20 at 1-3 (citations to notes of testimony omitted; bolding and italics added; some citation formatting corrected).

On March 17, 2020, Father filed two separate, timely notices of appeal for each docket number, in compliance with ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018), and its progeny. Contemporaneously with these notices of appeal, Father filed concise statements of errors complained of on appeal,

in accordance with Pa.R.A.P. 1925(a)(2)(i), raising a single, identical issue. On April 16, 2020, the juvenile court filed its Pa.R.A.P. 1925(a) opinion. Thereafter, on April 23, 2020, this court issued a **per curiam** order granting appellant's request to consolidate these appeals.

Father raises the following issue for our review:

> Whether the evidence was insufficient for the [juvenile] court to find [F]ather an indicated perpetrator of abuse by clear and convincing evidence where BCCYS did not prove by clear and convincing evidence that he either intentionally or recklessly caused [the Children's] injuries pursuant to 23 Pa.C.S.A. [§] 6303?

Father's brief at 3.

Our standard of review in dependency cases is as follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

**Interest of T.G.**, 208 A.3d 487, 490 (Pa.Super. 2019) (citation omitted), **appeal denied**, 211 A.3d 750 (Pa. 2019). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." **Interest of L.V.**, 209 A.3d 399, 411 (Pa.Super. 2019) (citation omitted).

A juvenile court may adjudicate a child dependent if the child meets the statutory definition by clear and convincing evidence. **See In re E.B.**, 898

A.2d 1108, 1112 (Pa.Super. 2006). Specifically, the court must determine, by clear and convincing evidence, that the child:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

*In re A.B.*, 63 A.3d 345, 349 (Pa.Super. 2013), quoting 42 Pa.C.S.A. § 6302(1). The term "clear and convincing" evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Id.* (citation omitted). However, "clear and convincing evidence" does not necessarily require "that the evidence be uncontradicted provided it carries a clear conviction to the mind or carries a clear conviction of its truth." *In re Novosielski*, 992 A.2d 89, 107 (Pa. 2010) (citation omitted), *cert. denied*, 562 U.S. 1137 (2011).

Here, Father does not dispute the fact that the Children both suffered femur fractures, but contends that BCCYS failed to produce clear and convincing evidence that Father intentionally, knowingly, or recklessly caused physical injury to the Children. (Father's brief at 7-10.) For the following reasons, we find that Father's claim is meritless.

This court has long recognized that although dependency proceedings are governed by the Juvenile Act, 42 Pa.C.S.A. §§ 6301–6375, the Child

Protective Services Law ("CPSL") "controls determinations regarding findings of child abuse, which the juvenile courts must find by clear and convincing evidence." **In Interest of N.M.**, 186 A.3d 998, 1011 (Pa.Super. 2018) (citation omitted). Section 6303 of the CPSL defines child abuse as, **inter alia**, "intentionally, knowingly or recklessly . . . [c]ausing bodily injury to a child through any recent act or failure to act." 23 Pa.C.S.A. § 6303(b.1)(1).[2] Bodily injury is defined as "[i]mpairment of physical condition or substantial pain." 23 Pa.C.S.A. § 6303(a).

Upon careful review of the record, we discern no abuse of discretion on the part of the juvenile court in adjudicating the Children dependent. The record corroborates the juvenile court's finding that the Children were victims of child abuse by clear and convincing evidence as the court found BCCYS's medical experts credible in testifying that the Children both suffered femur fractures that were most likely caused by inflicted or non-accidental trauma. (**See** juvenile court opinion, 4/16/20 at 4-8.) As recognized by the juvenile court, our inquiry is not, as Father suggests, whether there was clear and convincing evidence to support a finding that he was a perpetrator of the child abuse. It is undisputed that Father is a "perpetrator" as defined by 23 Pa.C.S.A. § 6303(a) because he is "a parent of the injured [Children]." **Id.** Contrary to Father's contention, once abuse of a child has been established

---

[2] We note that the juvenile court quotes and/or references this sub-section throughout its opinion but inadvertently designates it as Section 6303(b.1)**(3)**. (**See** juvenile court opinion, 4/16/20 at 3, 11.)

by clear and convincing evidence, a finding that a parent/caretaker of the child was the abuser does not need to be established by clear and convincing evidence. Rather, our supreme court has stated that the identity of the perpetrator of child abuse "**need only** be established through ***prima facie*** evidence in certain situations." ***In the Interest of L.Z.***, 111 A.3d 1164, 1174 (Pa. 2015) (emphasis added). ***Prima facie*** evidence is "[s]uch evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient." ***Id.*** at 1184 (citations omitted).

Section 6381 of the CPSL provides, in pertinent part, as follows:

> **(d)  Prima facie evidence of abuse.--**Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare of the child.

23 Pa.C.S.A. § 6381(d).

The ***In the Interest of L.Z.*** court further held that,

> [t]he parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive. The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the ***prima facie*** evidence presented by the CYS

> agency and the rebuttal of the parent or responsible person.

***In the Interest of L.Z.***, 111 A.3d at 1185 (footnote omitted).

Here, Father did not testify on his own behalf or provide any evidence rebutting the presumption that he inflicted the abuse or failed in his duty to protect the Children from said abuse. As the juvenile court reasoned in its opinion,

> clear and convincing evidence established that [the Children] were the victims of child abuse as defined by 23 Pa.C.S.[A. §] 6303(b.1)[(1)], and there was ***prima facie*** evidence that each child was abused by Father as one of multiple caretakers. The presumption of 23 Pa.C.S.[A. §] 6381(d) is applicable to this case, and Father failed to rebut it. Therefore, Father either perpetrated the abuse by inflicting the injuries or by failing to protect the Children.

Juvenile court opinion, 4/16/20 at 11 (bolding and italics added).

Based on all of the foregoing, we decline to disturb the findings of the juvenile court and affirm its February 24, 2020 amended orders of adjudication and disposition.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/16/2020